Good morning, Your Honors, and may it please the Court, I'm Terry Vandenberg. I represent David Weil in this appeal. This appeal concerns a summary judgment ruling of dismissal on Mr. Weil's claims of failure to promote and termination in 2013. I'd like to start by just going briefly through the factual background to this. Counsel, you don't have a lot of time. I'm going to tell you that I think the Court is familiar with the facts, so if you want to move straight to the argument, I think it's a better use of your time. Very well. You may use the time any way you want, but that's my advice. Very well. Thank you, Your Honor. Concerning the claims that have been brought, to talk about the failure to promote claim, there are two categories of evidence that were offered by Mr. Weil. One category was direct evidence of discrimination, an admission by a manager who had been involved in the hiring process, named Lynn Holmgren, to Mr. Weil, who told Mr. Weil, you have three things going against you. You're a former Verizon employee, you're not white, and you're not female. Let me ask you this question about that so I can understand the facts. It's my understanding that Holmgren, at the time that Holmgren made this statement, was not a supervisor at the time? She, her job had changed. She was then moved to a specialized role where she was no longer in charge of hiring for the position? That's my understanding, but nobody reported to her at the time? That is, that was Mr. Weil's understanding, as he testified. So the statement was made after being demissioned, or transferred, whichever? Yes, the statement was made after. And then she was terminated in June of that year? That's my understanding, yes. Does the record reveal why? It does not. Did you depose Ms. Holmgren? We did not. And why not? Because she is in another part of the country, and the decision was made not to depose her. You don't have a declaration from her? We do not. And is discovery now complete? Discovery is closed. Yes, discovery is closed. But what we do have So all of this is going to turn, all of your direct evidence is going to turn on the 801 ruling? The direct evidence, yes, on failure to promote, is on the 801 ruling. Okay, so why don't you tell us why you think that's wrong? Okay, I'll tell you why I think it's wrong. Why it's wrong is that there are two prongs to what needs to be shown under 801 2D, and that is that the statement concerned something within the scope of her employment, and the statement did, because even frontier witnesses admitted that she was involved in the hiring. No, but she wasn't involved at the time he was hired, that she was fired. She was moved to another position some two months before that and was not a final decision maker. So she wasn't in meetings where Mr. Weil's competitor was discussed. She was involved in the consideration of applications before she was removed from that role in January 2013, and even the district court in the district court's ruling said that the fact that she was not a decision maker was not, was not controlling on this. She, this did concern an aspect of her agency, of her employment, and the second prong, and I think what Judge Smith Well, it concerned, it concerned a part of her former employment with the company. Not with what she was presently doing, but what she had been doing. It concerned, and this goes to the second prong, and what we need to establish, I believe, is that we, what we need to establish is that her employment relationship still existed, her employment relationship with Frontier at the time of her statement, and we believe that the reasoning set out in McCormick I guess what I'm trying to focus you on is that then I think it matters whether this existence of the relationship applies generally as an agent, or as an agent with the scope of having that person to employ, because there's no question she didn't have that scope when she made the statement. At the time of the statement, but going to And the district court said, that's hearsay and I'm not letting it in. That's right. Now, what's my standard of review? I believe that your standard of review is to review the question de novo. No, it isn't de novo. I'm talking about a hearsay rule and an exception to hearsay rule. Those are rules of evidence, and I have a discretionary review. So there I am. I'm now merely an agent can, because they were in a situation where it was the scope of her agency, but not now, can say something that makes it not an exception to the hearsay rule. Isn't that what I'm doing? I would just like to turn to the standard of review, if I could just revisit that. We had cited to the United States versus that whether the district court can correctly construed the hearsay rules, a question of law reviewed de novo. And so we would assert that this is a question of law. So you think it's a construction of the rule and that that makes it de novo? That it's an interpretation. Did the district court misstate the 801? Did he misstate the law in any place? What the district court did was require an interpretation of the foundation that is not required under the rule. What was that? That was that at the time that the scope of the agency is determined at the time of the statement. And basically, what we have cited to is the reasoning in McCormick, is why should this statement fall within the admission standard? And what McCormick talks about is that you're looking at a question of reliability. And the reliability comes through the continued employment relationship. It doesn't come through the continued employment relationship in the exact position in which this person acted. So for example, if Ms. Holmgren had been promoted, if she had made a statement about her duties as vice president, and she became president of the company, is there a question of whether that statement should be allowed? Because hiring would not have been part of her duties at that point. The question goes to whether, again, her employment relationship existed at the time of the statement, and not that we needed to lay a foundation that while she still at the time of the statement had this particular responsibility, particularly considering that this responsibility had been exercised. The hiring had been done at this point. So no one had the responsibility at this point. It seems to me that what you're really suggesting is not that the district court had a bad rule, or that the district court had a rule that wasn't the rule, but that there was a misapplication of the rule. Now in my book, I guess I would have to say you'd have to show me a case that says that. They're saying, if you're going to interpret the rule, that's one thing, but we're talking about, we got the right rule on the book, and now we're applying it in this situation. And we had noted on a reply brief on page 8, bless you, that we had cited to the Wagner versus County of Maricopa case, 747 F1048, where the court said, this circuit's case law is not entirely clear regarding whether we reviewed de novo a district court's decision that a statement is or is not hearsay. And so I think that appeared like the latest statement, but again, the United States versus Layton case appeared to suggest that there was a de novo review. Let's move off that one, because I think we understand your argument. So you have to first of all show that your client belongs to the class of people protected, that they performed their work satisfactorily, that they suffered an adverse employment action, and that the employee was treated differently than a similarly situated employee. How can we suggest that she was performing satisfactorily her work? Yes, my client is David Weil. The district court had dismissed, based on the second and fourth elements of the McDonnell Douglas case, on satisfactory job performance. We have asserted and cited the Berrari case from the District of Oregon. And we would ask the court to apply that reasoning that satisfactory job performance should be... Well, wasn't all the evidence that we have that he was performing his work satisfactorily? There was evidence, but it was from prior years, then there was a downward trend, and there was no evidence that he was performing satisfactorily at the time. Well, what we have argued, we think, with the Berrari v. Home Depot case, is that satisfactory job performance has to be viewed before the period of discrimination. Because if you view it after the period of discrimination, basically that's when the harm has been imposed. But to get to discrimination is not just satisfactory to say, well, here's the period where we allege it. You're going to have to show some discrimination. Right. But this is the evidence of your indirect discrimination. The only evidence of the direct discrimination is Holmgren. And I just find it inexplicable that you didn't depose Ms. Holmgren. Well, it's... Because what the district court said was, look, she may or may not have been within the scope of her employment. The district court didn't knock you out on that point. The district court said that's a possibility, but you didn't lay the foundation to show for her statement. Now, if Mr. Weil had said, Ms. Holmgren told me, I was never going to make it to final consideration because in December and January, she was in meetings where it was said, he works for Verizon, he's not white and he's not a woman. There's no way that we'll hire him. That's a whole different set of circumstances. I would just address it in this way. First, it is our position, and we believe that it is, again, the foundation for 801D or 801 2D2, but this particular rule, the foundation, it's not required that you illustrate the person's job duties at the time of the statement. There simply is no... Well, we have to have something to put it in context. And if you don't have that, then you run the risk that you haven't laid the foundation for the hearsay. And you had the hearsay at all. So you now run the risk that you haven't laid the foundation to have a hearsay statement come in as direct evidence. We believe that we have laid the foundation because, again, we have shown, and Frontier has admitted, that she was still employed, she was still in an employment relationship with Frontier. And that's what the rule says, is it refers to, was made by the party's agent or employee on a matter within the scope of that relationship and while it existed. And what we are saying is the it, the it there, is the employment relationship. And, again, we go back to the reasoning of the cases that we cited. We have no context for what Ms. Holmgren was thinking when she said this. Is she saying the reason you didn't get this in March is because you work for Verizon, you're not white and you're, I mean, you're not white and you're not a woman. Right. Because then she's not within the scope of the employment because she was not a part of that decision-making process. She wasn't in any meetings. She was part of a team that was interviewing in December and January. Exactly. But there's no context for that in the statement that she made to your client. You haven't laid the foundation to show that that statement relates to the time period when she was a part of that decision-making process. So you run the risk that you haven't laid the foundation. That's what the district court said. District court did not disagree with you that she was, that she was relevant to this. The district court disagreed with us in what we needed to lay as a foundation. And that's our, that's the argument that we presented in our briefing. If I could briefly address the pretext argument because you said basically the only evidence that we found. Let me go one further. You've got another difficult part that the plaintiff's employer treated him differently than a similarly situated employee who does not belong in the protected class. What is the evidence of that? The evidence of that is that no white female director or manager of a call center at Frontier was given a developmental action plan, a performance improvement plan, or terminated during the period at issue. And the standard that the district court applied was, it went to the case did not concern the fourth element of the prima facie case. The only way that the company can show that it's not discriminating against your client is to go fire a white female employee? No. It's, it's, it's, was, was my client treated worse than people outside of his protected class? We're just talking about the prima facie case. Who else had a DAP and a PIP involved here that didn't get fired? Right. Well, that's Who did you have? Did you identify anybody? No, but our, our position is that we, we were not required to Then what's, what's similarly situated? Well, the similarly situated is that no, no white female employee was treated this way. And the only two black male managers or directors, and this was our, our, our testimony and evidence about Mr. Arnold, is that basically the same thing happened to them at the hands of the same manager. And the evidence regarding the, the role of Ms. Lauffert is critical in this. And we believe that the district court simply missed the evidence associated with the same manager doing basically the same thing. A high-performing manager, director of a Frontier call center did the same thing to another, to this other manager where he's high-performing and all of a sudden he's got performance problems and he's run out of the company. Ms. Lauffert's role is critical here. And I think it also goes to a consideration application of Reeves here is what, what do we need to do? And what we need to do is show we have a theory of discrimination and we have evidence in support of that theory. And we believe that we have, that we have done that. And what the district court did was basically say, Frontier's evidence trumps your evidence. And so we are going to disregard it. So we believe a full reading of, of our evidence because that's what, that's what this is about. It's not about Frontier's evidence. And I think that's what Reeves stands for. Reeves is the North Star. It's the North Star in this. I'm just trying to make sure I understand your argument. So what your argument is, we didn't have any evidence, there was no evidence of a woman getting this same kind of treatment. There's no evidence the woman was in that kind of a situation. But the only evidence you had was that another black person had received that treatment. Well. Is that your best evidence? Our, our best evidence is that, is that the only two black manager directors of call centers received this treatment. No white female did. And in terms of justification. And so the fact, and so I understand now. So the fact that the company hired a white female to fill the job really is irrelevant. I think it's, it's terribly important because. Why is it important? It's important because Mr. Weil was praised about his leadership in 2011, 2012, and then all of a sudden was not promoted based on lack of leadership. And he was, he wasn't promoted. But this white female didn't have in her background the same thing he did. Right. But, but it's looking at what evidence. Trying to figure out why it makes any difference on the similar situated employee outside the class treated more favorably. Well, the similarly situated goes to the fourth, the fourth element of the prima facie case on term, on termination. On the failure to The evidence that we had was that Ms. Brown was rated lower in her 2012 performance evaluation than Mr. Weil. 3.3 as opposed to 3.4. And that Mr. Weil had a bachelor's degree which was a preferred qualification. That is our evidence. Frontier has its evidence. Frontier has its argument and its evidence. But what we are here about today, we would assert, is our evidence. What is our theory? Do we have evidence in support of it? And we believe that, that we do. And we believe the district court erred in relying almost exclusively on Frontier's evidence. Thank you, Your Honor. Okay. Thank you, Mr. Vandenberg. I, I will allow you some time for rebuttal. We took up quite a bit of your time. Thank you, Your Honor. Good morning, Your Honor. Good morning. Your Honor, I would like to address a point that the court asked about Ms. Holmgren right away. The discovery did go forth, as the court observed, and depositions were taken. In fact, they were taken across the country. I believe in five different states. And so when it is said that she was in a different state, it didn't affect plaintiffs taking depositions in all the other states where other witnesses were in this case. So your point is, they could have done more to strengthen their claim than this one statement made. That is correct, Your Honor. Is this one statement made simply a stray remark? Is that what you're arguing? We're arguing that this was not a decision maker. That it was not a remark by any decision maker with respect to promotion or with respect to the termination. And it was distant in that it was that person's remark, if made, and we have no evidence on the point for which it was excluded, namely that it's hearsay because plaintiff wishes to use it for the truth of the matter. What is the evidence that she was disgruntled? That she was terminated in June? Yes. She was involuntarily removed and involuntarily terminated. But we don't know that she was disgruntled in April. That is correct, Your Honor. There's just really a pretty big void here regarding Ms. Holmgren. There is. And the United States Supreme Court, Justice Scalia, kind of made an observation in the St. Mary's Center case versus Hicks years ago in a similar pattern to what we have here with respect to what happens when you have a person who was once a supervisor. And then between the time of being a supervisor and having some responsibility for it, the then current plaintiff leaves and leaves involuntarily. And then the employer is put in the position of having to rely on that person who is now disgruntled. That was prescient of Judge Scalia with respect to the information that we have here. And that's on page 513 and 514 of the St. Mary's versus Hicks decision, which the parties cite. So that's not an unusual circumstance that you have somebody who was involved earlier who leaves and, as I said, I argue that she was disgruntled, but the Court is correct. And the decision doesn't depend on that in any event. Is this decision, I mean, it seems to me we're boiling it down to whether this is an exception to the hearsay rule or it isn't. The statement was made by an agent or employee concerning a matter within the scope of agency or employment. But what we're really determining is whether it was made during the existence of the relationship. Is that what we're determining? Well, the employer-employee relationship existed. But the duties, the agency, the responsibility that Ms. Holmgren had in April had nothing to do with any employee. In fact, there's Well, but if I read the rule more broadly and suggest that if she was an agent or employee and just because she was doing it, making this statement, and had transferred her employment in the company, she still could speak about what happened while she was in the proper agency relationship, then I'd have to let the statement in, wouldn't I? Well, if the hypothetical that the Court set potentially, but she was not, Judge Hobart Well, she was an employee. She was, yes, Your Honor, she was And she had been a supervisor. She had been a supervisor. And she had been involved in determining whether this person would be a counselor or not. She had been involved in the evaluation of three candidates in the fall of 2012. And determining which one would be the counselor. And determining among them how they were ranked. She ranked three people. He was ranked second. And her email from January Didn't Ms. Holmgren, wasn't she, in fact, his direct supervisor? She was. Until And didn't she, wasn't she involved in determining who would take over as the counselor? During a set period of time? The only thing we've got here is that she was involved in doing this for a set period of time, but then she was transferred just before she said this statement. So what we're really saying is, why is this not an exception to the hearsay rule? Is this an interpretation of the hearsay rule that we're after here? Is this an application? What is it? The Judge Hobart's decision should be reviewed under the abuse of discretion standard. Because it's an application, but I'm now saying, why is this not an interpretation of what the rule says at all, which is not an abuse of discretion? Well, the plaintiffs cite the Wagner case from Arizona, and that court traces and deals with several decisions of the Ninth Circuit, making the distinction between evidentiary ruling and an interpretation of the hearsay rule. And to the extent that the district court's exclusion on summary judgment of that evidence was an abuse of discretion standard, and we've cited the case as Well, just a minute. If he's interpreting this hearsay rule, it's not an abuse of discretion standard. Once the rule has been properly interpreted and put in action, the application thereof is certainly an abuse of discretion standard. But to interpret the rule in the first place, your opposition suggests, that's de novo, and cites the cases. And I said, oh, come on. And then they kept coming back, saying, no, this is de novo because it's an interpretation of the rule, Judge. Tell me what I'm going to say to him. That is an interpretation of Well, the construction of the rule, yes, is an interpretation. Well, it is the construction. Whether this person can talk about the scope of what they did in their former job when they're still an employee of the company, that's the question.  Well, your Honor, the questions that were asked of my opponent, I think, got at the heart of this, and namely that the statement were not within the scope of the employment at the time or the agency at the time they were made. Let me ask you another question then. Supposing this statement comes in, do we go back? Do we undo the summary judgment? We do not undo the summary judgment. And I'd call to the Court's attention the memorandum. It's in exhibit and been discussed. It's ER-595. It's a January 14, 2013, email from Ms. Holmgren herself regarding That's just evidence that comes in as well. But if there is a statement in the record by someone who was his boss that says your race and your gender is against you, and it comes in, it seems to me on summary judgment I've got to send it back. I can't say it's harmless, especially on summary judgment. It certainly will show a pretext, so why don't I send it back? Ms. Holmgren was not a decision-maker with respect to the promotion of her employment or the termination. Your Honor, what happened here was Ms. Holmgren is out of the position and ultimately out of a job in January, and she had not made a decision. That's the point of the exhibit that I'm just referring to, the January 14, 2013, email from her where she says herself that she is still considering other candidates, and there's someone else to interview, and that in her evaluation he, Mr. Weil, needs further evaluation. I have also asked him to present some material to the broader team, and this will be our time, she refers to somebody else, to study further how he presents his leadership style and some other data. We are still going to interview another candidate. This is her assessment of him, the person that he's relying on, and so she had not made a decision. She interviewed others. He was not the top candidate. Was the candidate they were meeting in Fort Wayne, that wasn't Ms. Brown who ultimately got it, was it? It was not Ms. Brown. And Ms. Brown had not been interviewed at this point. That had not been interviewed by Ms. Holm, that's correct. Keep in mind that Ms. Holm is out of a job. She gets replaced entirely. Never does interview Ms. Brown, does she? She never does, and she doesn't. Keep in mind this is in January. She's gone. New person comes in who now, I believe this is Ms. Potts, who's supervising several different centers. One of them is under the temporary acting control of Mr. Weil, the other of Jennifer Brown. So Ms. Becky Potts now is a decision maker, and she's looking at the two managers running two centers, three in one case, because one manager, Ms. Brown, was running two centers, and she's observing them contemporaneously with her making a decision. And she determines who is better qualified, and she makes that decision. And Ms. Holmgren has nothing to do with it. She's long gone. And so that's why I say that even if one were to receive this statement, it would not change the outcome, because this was not the decision maker. The admission, the record shows who the decision maker was. The decision maker says, I had no influence by Ms. Holmgren. There's no other connection at all. There's no other prohibited statement. There's no other statement implicating race or gender or anything else in the transfer or in the promotion. And so we have the decision maker now who is observing. And we cite it to the court, one of the latest cases on this point, the Merrick case, which says that the decision maker in this instance can use the decision maker's own perception of what is going on. Do we know who made the decision to hire Brown? Yes. That was Ms. Potts. And that was Potts. Was it Potts alone, Mr. Johnson involved? Potts alone, I believe. And Johnson, some of the others were in the HR capacity. Some others knew of Mr. Wilde's performance. But it was Ms. Potts' decision, based on her knowledge, operations, review, and observations of the two candidates, if she were considering Mr. Wilde at that point, but certainly of the two. I guess I want you to think again about what Judge Bybee's asking you, because I don't think that's as clear to the record as you suggest. There's no question Potts was the senior vice president for residential contact center. There's no question that Potts was the plaintiff's supervisor. And there's no question that Potts became a director. But it's unclear to me that she was the only one making the decision, with Johnson, with Wilde, and others who were in HR. I think the record will show, at pages 154, 159, through 161, through the testimony of the PMK, that Ms. Potts was the decision maker. And there's no record evidence that anyone else was a decision maker. I assume... Because Ms. Potts took over what Ms. Holmgren did, then Ms. Holmgren was also the decision maker? Ms. Holmgren was not a decision maker. She was in that position at one point. She had been. Up until January. It's likely then that she would have been the sole decision maker. I can't say. That's not in the record. It appears, from all that we know, that she would have been the decision maker. But she left. And it was the person in the position who was the decision maker. So it's certainly a reasonable inference that Ms. Holmgren would have been, had she been in the position at the time. She was not. Keep in mind, also, that changes were made. She was asked. She left from that position, and then ultimately left. And at this point, this is a dynamic business that we're operating, and people do change. Mr. Zuniga, who had been the supervisor that created the vacancy, that created this chain, occurred. And Ms. Brown, the same thing. So Ms. Potts was the decision maker. Holmgren was not involved. Again, that's in the record at page 91. And the basis for the decision were articulated both with respect to the transfer of Brown, as well as Brown's termination of Mr. Weil. And again, essentially undisputed. Mr. Weil either said that he didn't know, or he agreed with him. And the same thing with respect to his self-assessment of his performance relative to his time being supervised by Ms. Brown in 2013, and the DAP and the PIP going to those issues as well. So as the record stands, Your Honor, the question is, was Mr. Weil discriminated against in his East Indian descent? Or was his employment terminated because of that? And there is no evidence in the record, and just bear with me for a moment. I know we have Ms. Holmgren, and we've tried to talk about that. Counsel, you're now over your time, so you may want to sum up. Yes, I do. And let me just do so in the context of the case that we cited, and it'll just take me a minute to put my hands on it. That's the Merrick case, which we sent to the Court last week, and I would encourage the Court to read the case. It is on all fours with the case that we have here. Such evidence may still be insufficient to create a triable issue of fact for a jury, talking about circumstantial evidence. There must be evidence supporting a rational inference that intentional discrimination on grounds prohibited by statute was the true reason. And that's on page 18. And then, in short, context is key when a plaintiff alleges discrimination based on the context of the case. Counsel, I think if you cited the case to us, we've got it. All right. Thank you very much, Your Honor. Thank you. Mr. Vandenberg, I'll give you a minute. Thank you, Your Honor. I'll be very brief. In the ruling that Judge Robart issued at ER 24, even in the decision, he says, accordingly, Ms. Holmgren's lack of decision-making authority at the time she made the statement is not dispositive on whether the statement relates to a matter within the scope of her employment. So even the district court says that, but then the district court goes on and says The next paragraph says, you just didn't lay the foundation here. And what we are saying is that there's no authority for saying that that should be part of our foundation, that the case is But we have to have some kind of context for all of this. We don't know what period she's talking about. We don't know what she's referring to. We don't know whether she's talking about her own motivation or whether she's talking about somebody else's motivation that she's heard about. So I mean, we're just left with all kinds of questions. And this is it. This is the ballgame. And these are the questions that Mr. Weil would face at trial. Mr. Weil would make the statement, and so But all he could do was just repeat exactly what he said. And Mr. Weil was quite uncertain about all of this. He wasn't even sure that something inappropriate had been said to him. He's quite equivocal in answer to the question. And when you didn't depose Ms. Holmgren, we're left without the best evidence. But there's — we would submit there's no best evidence argument here, and there's no requirement that we depose Ms. Holmgren as a part of this hearsay exception. It's simply not part of the rule. I think that Mr. Weil's testimony could be offered It's not part of the rule, counsel, but then you live or die on the 801 exception We live or die at trial on direct evidence. But I wouldn't want the court to lose sight of the significant evidence of pretext, both in the failure to promote case and in the termination case. Just very briefly, the failure to promote, again I think we've heard quite a bit on the evidence of pretext, counsel. Okay. All right. And so, in conclusion, I would ask that the court reverse and remand  Thank you, Mr. Medverd. We thank both counsel for the argument. Weil v. Citizens Telecom Services is submitted.
judges: Bybee, N.R. Smith, Antoon